## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| **AUTOTECH TECHNOLOGIES, LP d/b/a EZAUTOMATION**, an Illinois Limited Partnership, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. |
| | ) | |
| **PALMER DRIVES CONTROLS AND SYSTEMS, INC.**, a Colorado Corporation, and **LYNN WEBERG**, | ) ) ) | |
| | ) | |
| Defendants. | | |

## COMPLAINT

NOW COMES Plaintiff AUTOTECH TECHNOLOGIES, LP d/b/a EZAUTOMATION ("Plaintiff"), by and through its attorneys, Parikh Law Group, LLC, and as its Complaint against Defendant PALMER DRIVES CONTROLS AND SYSTEMS, INC. ("Defendant") and Defendant LYNN WEBERG ("Weberg"), it states as follows:

## INTRODUCTION

This action is brought by the Plaintiff as a civil action against Defendant and Weberg for breach of fiduciary duties, tortious interference, and fraud. Specifically, Plaintiff contends that based on certain representations made to it by Weberg, Plaintiff and Defendant entered into a partnership wherein Plaintiff brought Defendant in on a project for one of Plaintiff's customers. Plaintiff and Defendant sought to jointly provide an engineering and manufacturing solution using Plaintiff's products to Plaintiff's customer. The partnership proceeded with the understanding that, per the desires of Plaintiff's customer, Defendant would utilize only Plaintiff's products in connection with the project. After an extended period of time with no communication from Defendant, Defendant, via Weberg, randomly and out of the blue e-mailed

Plaintiff indicating that Defendant had recommended to Plaintiff's customer that Plaintiff's customer use Plaintiff's competitor's products for its project as opposed to Plaintiff's products. In direct violation of the partnership arrangement in place between Plaintiff and Defendant, Defendant secretly solicited and introduced direct competitors of Plaintiff to Plaintiff's customer in an attempt to deliberately push Plaintiff out of the picture and use another company's services instead, despite the fact that Plaintiff had introduced Defendant to its customer for the purposes of completing the customer's project.  Plaintiff seeks damages against Defendant as a direct result of Defendant's actions in interfering with Plaintiff's contracts and expectancy and for its breach of fiduciary duties.

## PARTIES

1. Plaintiff, AUTOTECH TECHNOLOGIES, LP d/b/a EZAUTOMATION, is an Illinois limited partnership with its principal place of business in Carol Stream, Illinois.  The General Partner is Shalli Industries, Inc., an Illinois corporation with its principal place of business in Illinois.  The Limited Partner of Plaintiff is AVG Advanced Technologies Limited Partnership.  The General Partner of AVG Advanced Technologies Limited Partnership is Shalli Industries, Inc., and the Limited Partners are Shalli Industries, Inc. and 80 trusts.  As to the 80 trusts, the trustees and trusts are citizens of Illinois. Accordingly, Plaintiff and all owners are citizens of states other than Colorado. EZAUTOMATION is a d/b/a of Plaintiff and does not have its own, separate FEIN.

2. Defendant, PALMER DRIVES CONTROLS AND SYSTEMS, INC., is a corporation organized and existing under the laws of the State of Colorado, having its principal place of business in Englewood, Colorado.  Defendant touts itself as being Colorado owned with its products being made in Colorado as well.

3.  Defendant LYNN WEBERG is the individual who is, and was at all relevant times hereto, the President of Defendant.  Weberg is a citizen of the state of Colorado.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction over the subject matter of the Plaintiff's claims pursuant to 28 U.S.C. §1332 because the Plaintiff, Defendant, and Weberg are citizens of different states and because the amount in controversy exceeds $75,000.00.

5.  This Court may exercise personal jurisdiction over the Defendant and Weberg because they are residents of the State of Colorado and conduct business in and through the State of Colorado.

6.  Venue is proper in this Court pursuant to 28 U.S.C. §1391.

## BACKGROUND FACTS

7.  Since 1975, Plaintiff and its family of businesses has been in the business of designing and manufacturing high end and high-quality electronics products.

8.  Plaintiff eventually became an international company with many Fortune 500 companies, in addition to hundreds of others, as it customers.

9.  Green CO2 Systems ("Green") was one of such customers for Plaintiff.

10. Green, being in the business of manufacturing carbon dioxide equipment for the food-service industry, had been a customer of Plaintiff's since July 2017.

11. Due to the qualifying due diligence that occurs prior to sale and purchase of products, Plaintiff's customer relationships tend to be long term.

12. Accordingly, Plaintiff and Green enjoyed a long, strong, and professional relationship up until the events outlined below.

13. In addition to Green being a customer of Plaintiff's, Defendant was a customer of Plaintiff's and purchased products from Plaintiff on an ongoing basis from February 2017.

14. On July 19, 2017, Green contacted Plaintiff and spoke to one of Plaintiff's sales employees.

15. During that conversation, Green presented Plaintiff with the scope of a project requiring various programming and panel work needed by Green for its business.

16. Following the conversation on July 19, 2017, Green sent Plaintiff a list of the components required for completion of Green's project.

17. On July 26, 2017 and after receiving a proposal from Plaintiff regarding its involvement in Green's project, Green purchased certain equipment from Plaintiff which would subsequently be used in completing the Green project.  The purchase by Green included special pricing from Plaintiff extended to Green based on projected quantity for the project.

18. The conversations between Plaintiff and Green regarding Green's project involved confidential information being imparted to Plaintiff by Green pertaining to the plans and specifications of Green's project.

19. Given Green's history of purchasing Plaintiff's products and being familiar and satisfied with Plaintiff's products, Green wished to utilize Plaintiff and its products in connection with Green's anticipated project.

20. On or around early August 10, 2017, Plaintiff met with Defendant and discussed the possibility of it and Defendant becoming partners in and for various projects. Specifically, Plaintiff sought a system integrator partner near or in the West Coast of the United States who it could partner with for the benefit of Plaintiff and Plaintiff's end customers. During that meeting, Defendant assured Plaintiff that it would utilize Plaintiff's products exclusively for any customer projects brought to Defendant by Plaintiff. Defendant further represented to Plaintiff that it would have a dedicated employee who would be charged with learning Plaintiff's systems and performing the tasks required for the Green project utilizing Plaintiff's products.

21. On August 11, 2017, Plaintiff, via its President/CEO, sent an e-mail to the owners/officers of Defendant. In the August 11, 2017 e-mail, Plaintiff followed up on its previous conversation with Defendant and once again inquired about Defendant's interest and ability to be Plaintiff's partner for the Green project. *See* Exhibit A.

22. In response, Defendant Lynn Weberg ("Weberg"), President of Defendant, stated that "[w]e looked forward to the opportunity to partner with you on future projects" *(sic)*, "I will commit to you that we will get staff trained on your product and would do programming in house for the EZ Automation opportunities", and "[w]e would appreciate the opportunity to earn your business and trust and become value partner to your organization's future success." *See* Exhibit A.

23. On August 30, 2017, Plaintiff sent Defendant an e-mail informing it that the previously-referenced customer, for which Plaintiff offered the partnership opportunity to Defendant, is ready to move forward with its project and that it was interested in meeting with

Plaintiff and Defendant to discuss project and ensure that Defendant was able to perform within the scope of the project utilizing Plaintiff's products.  *See* Exhibit A.

24. Relying on the assurances from Defendant and after further discussion with Defendant regarding the partnership between Plaintiff and Defendant, Plaintiff, on September 1, 2017, introduced Defendant to its existing customer, Green.  In this e-mail from Plaintiff to Green and given the partnership arrangement in place between Plaintiff and Defendant, Plaintiff introduced Defendant to Green as Plaintiff's "local SI partner."  Plaintiff further complimented Defendant and its operations during its introduction of the Defendant to Green.  *See* Exhibit B.

25. On September 1, 2017 and in response to the introduction e-mail sent by Plaintiff, Defendant, via Weberg, responded to Plaintiff's e-mail and stated that they look forward to "kicking this project off" and that Defendant had an employee, Dallas Trahan ("Trahan") who was spending his time becoming familiar with Plaintiff's software in anticipation of the Green project.  *See* Exhibit B.

26. Plaintiff only introduced Defendant to Green after it received assurances from Defendant that Defendant would only utilize Plaintiff's products in connection with the Green project.

27. On September 13, 2017, Plaintiff inquired with Defendant and Green as to whether they had been able to connect in person in an effort to begin implementation of the Green project.  *See* Exhibit B.

28. Subsequently, Defendant and Green had a meeting to discuss the scope and expectations of Green's required project.

29. On October 12, 2017, Plaintiff, Defendant, and Green had a conference call to discuss the details of the Green project.  Thereafter, Defendant sent Plaintiff an e-mail thanking Plaintiff for its assistance on a conference call with Green.  Defendant further requested of Plaintiff that "[i]f you could send us some info on the enclosures and any other components that you may have specified for this project it would be much appreciated.  This will help us going forward with our quote.  I want to thank you again for turning us on to this opportunity.  We look forward to working with you." *See* Exhibit C.

30. Conversations thereafter remained ongoing as Plaintiff, Defendant, and Green navigated the scope of the project and worked towards a start date.

31. While these conversations ensued, Defendant made no disclosure to Plaintiff that Defendant was exploring introducing competitors of Plaintiff to Green.

32. On December 8, 2017, Plaintiff flew to Colorado to have a meeting with Green regarding the project.  During this meeting, Green confirmed with Plaintiff once again that Green would be moving forward with the project using Plaintiff's products only.

33. On December 11, 2017, Defendant, via Weberg, sent Plaintiff an e-mail asking Plaintiff to provide the pricing it has in place for Green's purchases of Plaintiff's products.  Additionally, Defendant desired to also supply the hardware for the Green project in addition to its previously-anticipated involvement of only providing the engineering and control panel services related to the Green project.  *See* Exhibit D.

34. In response, Plaintiff reminded Defendant that Green had special pricing from Plaintiff because of the fact that Green and Plaintiff were working on several projects together involving Green's use of Plaintiff's products.  *See* Exhibit D.

35. Defendant made no disclosure to Plaintiff that Defendant was exploring introducing competitors of Plaintiff to Green at this time.

36. After Plaintiff's response regarding Green's special pricing for Plaintiff's products, there was no further communication from Defendant.

37. Finally, on January 11, 2018, Defendant, via Weberg and out of the blue, e-mailed Plaintiff and advised that Defendant and Green would not be moving forward with the project utilizing Plaintiff's products and would instead be utilizing a competitor's, Unitronics, products for the Green project.  *See* Exhibit E.

38. Unitronics is a direct competitor of Plaintiff.

39. In the January 11, 2018 e-mail from Defendant to Plaintiff, Defendant claimed that "it was determined that there were several features that Green CO2 wanted that the EZ Automation system would not handle."  Additionally, Defendant informed Plaintiff that "[i]t was determined that Unitronics provided a superior solution for Green CO2."  Accordingly, Defendant advised Plaintiff that Green and Defendant would not be moving forward with the project utilizing Plaintiff's products.  *See* Exhibit E.

40. This January 11, 2018 e-mail from Defendant to Plaintiff additionally informed Plaintiff that the Defendant was asked to research alternative systems.  This was the first time Plaintiff had learned that Defendant was secretly and surreptitiously researching alternative companies and products to use in place of Plaintiff's.  *See* Exhibit E.

41. In response, Plaintiff reminded Defendant that he had not been informed about Defendant researching alternative and replacement companies and that Plaintiff had brought this opportunity to Defendant in the first place.  *See* Exhibit E.

42. The January 11, 2018 e-mail from Defendant to Plaintiff was the first time Plaintiff learned about any issues with its products in connection with the Green project.

43. In reality, Plaintiff's products do in fact already possess many of the features required for the Green project, and Plaintiff has the capability to modify its products to achieve additional features that may have been requested for the Green project; however, Plaintiff was never given the opportunity to do so.

44. Additionally, in the same January 11, 2018 e-mail thread, Defendant's employee, Trahan, referenced the fact that he had previously worked with Unitronics in the past and claimed that the decision to forego using Plaintiff's products was solely the decision of Green. *See* Exhibit E.

45. In reality, it is Defendant who advised Green of Unitronics and who brought Unitronics to Green, despite the relationship Defendant had with Plaintiff and despite the fact that Defendant was only involved in the Green project due to Plaintiff bringing it in as a partner.

46. Subsequently and in the same January 11, 2018 e-mail chain, Defendant, via Weberg, disclosed to Plaintiff for the first time that its employee, Trahan, had worked with Unitronics before, was familiar with Unitronics products, and had inquired several times about switching from using Plaintiff's products to using Unitronics' products. *See* Exhibit E.

47. Furthermore, in the January 11, 2018 e-mail chain, Defendant, via Weberg, stated that "[a]fter considerable research and product comparison, it was decided by all parties that the Unitronics platform was a better solution. This decision was made in late December,

and with the holidays this has been the first opportunity to reached out to you *(sic)*." *See* Exhibit E.

48. Plaintiff was never a part of any discussion pertaining to its or a competitor's products and had no involvement in the decision to switch to Unitronics products for the Green project.

49. The January 11, 2018 e-mail from Defendant to Plaintiff was the first time that Plaintiff learned that Defendant had been introducing Green to Plaintiff's competitors and advising Green to use Plaintiff's competitors' products instead of Plaintiff's.

50. Defendant's basis for believing Plaintiff's products lacked features was based on a generic and vague inquiry Defendant sent to Plaintiff's technical support department.

51. Specifically, Defendant inquired as to whether Plaintiff's PLC products can handle e-mail functionality.  In response, Plaintiff's technical support department stated that no PLC can handle e-mail functionality.  Defendant claimed that it already did the e-mail functionality with Plaintiff's competitor's product which happened to be an HMI and PLC combination unit.  Defendant's inquiry was neither specific of the end customer nor did it make any mention that an HMI was also involved in the project.

52. Green's project involved both PLC and HMI technology.

53. Plaintiff's anticipated involvement pertained to providing both PLC and HMI technology.

54. Plaintiff's HMI technology can indeed handle e-mail functionality.

55. Defendant's representation to Green that Plaintiff's products cannot handle e-mail functionality is false.

56. Defendant sought to find lacking features in Plaintiff's products for the sole purposes of pushing Plaintiff out of the transaction and instead using Unitronics, Plaintiff's competitor.

57. Defendant had ample access to Green due to the fact that their offices are in close proximity to one another in Colorado.  Accordingly, Defendant often met with Green without Plaintiff's knowledge.

58. In response to the January 11, 2018 e-mail from Defendant, Plaintiff reminded Defendant that Plaintiff's products could indeed handle the functionality being requested by Green for its project.  *See* Exhibit E.

59. On January 12, 2018, Plaintiff sent Defendant a letter.  In Plaintiff's letter, Plaintiff reminded Defendant that it only introduced Defendant to Green after receiving assurances that Defendant would have an engineer employee working on the Green project using only Plaintiff's products.  Plaintiff additionally reminded Defendant that Defendant was responsible for introducing Green to Plaintiff's competitor, and that Green had indicated once again that it wished to use Plaintiff's products only moving forward with the project.  *See* Exhibit F.

60. At all times up until January 11, 2018, Plaintiff reasonably believed that Defendant was acting in the best interests of Plaintiff and the parties' partnership arrangement.

61. Defendant only learned and began communicating with Green as a result of Plaintiff's introduction of it to Green.

62. Between October 12, 2017 and January 11, 2018, Defendant proceeded contrary to its obligations to Plaintiff and provided Green with false and misleading information about Plaintiff's equipment.

63. At all times relevant hereto, Plaintiff expected that any information Defendant learned regarding any competitor of Plaintiff's would be disclosed to Plaintiff for the purposes of preserving the proper use of Plaintiff's equipment for the Green project.

64. To date, Green continues to market and sell the contemplated product using parts obtained from Plaintiff's competitor. *See* Exhibit G (Greentouch Controller product).

## COUNT I – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS AGAINST DEFENDANT

65. Plaintiff hereby incorporates Paragraphs 1 through 64 as though fully set forth herein.

66. At all times relevant hereto, Green was a customer of Plaintiff's.

67. Beyond the project involving Plaintiff and Defendant, Green was an established customer of Plaintiff prior to even being introduced to the Defendant.

68. Plaintiff and Green had a valid commitment in place wherein Plaintiff would sell, and Green would purchase, various products from Plaintiff at a discounted and special price. The expected life of this arrangement was over the term of approximately ten (10) years.

69. Defendant herein knew that Plaintiff and Green had commitments in place and that Green purchased products from Plaintiff and anticipated purchasing additional products from Plaintiff.

70. Defendant herein knew that Green had approached Plaintiff directly to contract with Plaintiff to perform the tasks and provide the equipment necessary to complete Green's anticipated project.

71. Plaintiff partnered with Defendant for the purposes of completing the Green project and introduced Defendant to Green.

72. After being introduced to Green, Defendant began communicating, meeting, and working directly with Green.

73. After communicating and meeting with Green directly, Defendant began introducing Green to Plaintiff's competitors.

74. After being introduced to Green by Plaintiff and after communicating and meeting with Green directly, Defendant advised Green that Plaintiff's products were inferior to those of Plaintiff's competitors.

75. After being introduced to Green by Plaintiff and after communicating and meeting with Green directly, Defendant advised Green that it should use Plaintiff's competitor's products instead of Plaintiff's.

76. Subsequently, Green stopped purchasing products from Plaintiff and additionally sought to use Plaintiff's competitor's products for its anticipated project.

77. Green did not do business with Plaintiff's competitors prior to Defendant introducing Green to them.

78. At all times up until late December 2017, Green sought to use Plaintiff's products only in connection with its anticipated project.

79. Defendant's actions of introducing Green to Plaintiff's competitors, making misrepresentations about Plaintiff's products' capabilities, and convincing Green to stop using Plaintiff's products caused Green to breach its commitment with Plaintiff.

80. Defendant induced Green's breach intentionally and without justification in an effort to gain an economic advantage.

81. Green's breach of commitment was directly caused by Defendant's actions outlined above.

82. As a result of Defendant's actions of inducing Green to stop using Plaintiff's products, Plaintiff has suffered damages.

83. Per the arrangement between Green and Plaintiff, Plaintiff anticipated receiving approximately $1.5 million per year on all projects discussed between Green and Plaintiff for at least ten (10) years.

WHEREFORE, Plaintiff, AUTOTECH TECHNOLOGIES, LP d/b/a EZAUTOMATION, respectfully requests that this Honorable Court enter judgment in its favor in the amount of $5,000,000.00 for its loss of business associated with the Green project, and for any and all other relief this Court deems just and proper.

### COUNT II – TORTIOUS INTERFERENCE WITH PROSEPCTIVE ECONOMIC ADVANTAGE AGAINST DEFENDANT

84. Plaintiff hereby incorporates Paragraphs 1 through 64 as though fully set forth herein.

85. Green was a customer of Plaintiff's since July 2017.

86. As a customer, Green purchased products from Plaintiff to use in connection with Green's business operations.

87. In July 2017, Green approached Plaintiff and informed Plaintiff that it wanted Plaintiff to assist and supply products for an anticipated large project.

88. To solidify Plaintiff's involvement in Green's project, Green provided Plaintiff the scope of the project, exchanged e-mails with Plaintiff, discussed pricing terms, discussed functionality and goals, had meetings, and entrusted Plaintiff with the responsibility of finding a third-party entity who could provide various engineering and panel services utilizing Plaintiff's products.

89. Accordingly, Plaintiff, after receiving certain assurances that its products would be utilized in connection with Green's project, extended to Defendant the opportunity to partner with Plaintiff to facilitate the completion of Green's project.

90. Plaintiff had a valid business relationship with Green and expected that relationship to grow significantly.

91. Seeing how Plaintiff introduced Defendant to Green and brought Defendant the Green opportunity, Defendant had knowledge that Plaintiff expected to have an ongoing business relationship with Green.

92. In the earlier months and up until Defendant began advocating that Green utilize Plaintiff's competitors' products, Defendant repeatedly insisted and assured Plaintiff that it would be utilizing Plaintiff's products only.

93. In direct contradiction to its assurances and despite the fact that Plaintiff had brought it into the Green project in the first place, Defendant purposefully interfered with Plaintiff's expectation to the point that the relationship between Green and Plaintiff no longer exists, and Green stopped communicating and using Plaintiff's products altogether.

94. But for the Defendant's actions, Plaintiff reasonably expected to make a large profit from its anticipated relationship with Green.

95. As a result of Defendant's actions of inducing Green to stop using Plaintiff's products, Plaintiff has suffered damages.

WHEREFORE, Plaintiff, AUTOTECH TECHNOLOGIES, LP d/b/a EZAUTOMATION, respectfully requests that this Honorable Court enter judgment in its favor in the amount of $5,000,000.00 for its loss of business associated with the Green project, and for any and all other relief this Court deems just and proper.

### COUNT III – BREACH OF FIDUCIARY DUTY
### DUTY OF LOYALTY
### AGAINST DEFENDANT

96. Plaintiff hereby incorporates Paragraphs 1 through 64 as though fully set forth herein.

97. Plaintiff was approached by Green to facilitate and complete an anticipated project on behalf of Green.

98. Plaintiff presented Defendant with the opportunity to be its partner in connection for the Green project.

99. Before introducing Defendant to Green, Defendant repeatedly assured Plaintiff that only Plaintiff's products would be used to complete Green's project, per the wishes of Green itself.

100.    Accordingly, Plaintiff and Defendant entered into a partnership for the purposes of completing Green's project.

101.    Plaintiff and Defendant repeatedly referred to one another as partners.

102.    Plaintiff was the primary contact for the Green project up until the point that Defendant began communicating with Green directly and without Plaintiff's knowledge.

103.    A fiduciary relationship existed between Plaintiff and Defendant wherein each owed the other a duty of loyalty.

104.    Defendant breached its fiduciary duty of loyalty owed to Plaintiff by introducing Plaintiff's competitors to Green, physically bringing in Plaintiff's competitors to Green's office, advocating for Plaintiff's competitors, making misrepresentations about Plaintiff's products to induce Green to use Plaintiff's competitors' products instead, and by representing Plaintiff's products as being inferior to Plaintiff's competitors' products.

105.    As a result, Green stopped its use of Plaintiff's products and instead was convinced to use the products of Plaintiff's competitors.

106.     As a result of Defendant's actions of inducing Green to stop using Plaintiff's products and to instead use Plaintiff's competitors' products, Plaintiff has suffered damages.

WHEREFORE, Plaintiff, AUTOTECH TECHNOLOGIES, LP d/b/a EZAUTOMATION, respectfully requests that this Honorable Court enter judgment in its favor in the amount of $5,000,000.00 for its loss of business associated with the Green project, and for any and all other relief this Court deems just and proper.

## COUNT IV – BREACH OF FIDUCIARY DUTY
## DUTY OF CARE AND DISCLOSURE
## AGAINST DEFENDANT

107.     Plaintiff hereby incorporates Paragraphs 1 through 64 as though fully set forth herein.

108.     Plaintiff was approached by Green to facilitate and complete an anticipated project on behalf of Green.

109.     Plaintiff presented Defendant with the opportunity to be its partner in connection for the Green project.

110.     Before introducing Defendant to Green, Defendant repeatedly assured Plaintiff that only Plaintiff's products would be used to complete Green's project, per the wishes of Green itself.

111.     Accordingly, Plaintiff and Defendant entered into a partnership for the purposes of completing Green's project.

112.     Plaintiff and Defendant repeatedly referred to one another as partners.

113.     Plaintiff was the primary contact for the Green project up until the point that Defendant began communicating with Green directly and without Plaintiff's knowledge.

114.     A fiduciary relationship existed between Plaintiff and Defendant wherein each owed the other a duty of care.

115.     Defendant breached its fiduciary duty of care owed to Plaintiff by introducing Plaintiff's competitors to Green, advocating for Plaintiff's competitors, making misrepresentations about Plaintiff's products to induce Green to use Plaintiff's competitors' products instead, and by representing Plaintiff's products as being inferior to Plaintiff's competitors' products.

116.     As a result, Green stopped its use of Plaintiff's products and instead was convinced to use the products of Plaintiff's competitors.

117.     As a result of Defendant's actions of inducing Green to stop using Plaintiff's products and to instead use Plaintiff's competitors' products and in representing Plaintiff's products as inferior and Plaintiff's capabilities as lacking compared to Plaintiff's competitors, Plaintiff has suffered damages.

WHEREFORE, Plaintiff, AUTOTECH TECHNOLOGIES, LP d/b/a EZAUTOMATION, respectfully requests that this Honorable Court enter judgment in its favor in the amount of $5,000,000.00 for its loss of business associated with the Green project, and for any and all other relief this Court deems just and proper.

## COUNT V – FRAUD
## AGAINST DEFENDANT

118.     Plaintiff hereby incorporates Paragraphs 1 through 64 as though fully set forth herein.

119.     Plaintiff was approached by Green to facilitate and complete an anticipated project on behalf of Green.

120.     Plaintiff presented Defendant with the opportunity to be its partner in connection

for the Green project.

121.     Before introducing Defendant to Green, Defendant repeatedly assured Plaintiff

that only Plaintiff's products would be used to complete Green's project, per the wishes

of Green itself.

122.     Plaintiff, as the current provider for Green, insisted that only its products be used

for the Green project and per Green's wishes.

123.     After Defendant assured Plaintiff repeatedly that only its products would be used,

Plaintiff introduced Defendant to Green and entered into a partnership arrangement with

Defendant for the purposes of completing the Green project.

124.     Thereafter, Defendant began communicating directly with Green.

125.     Unbeknownst to Plaintiff, Defendant began advising Green that it should use

Plaintiff's competitors' products for Green's anticipated project.

126.     Unbeknownst to Plaintiff, Defendant presented Green with alternatives to

Plaintiff's products.

127.     Unbeknownst to Plaintiff, Defendant advised Green that Plaintiff's products were

inferior and/or incapable of providing Green the functionality that it required for its

project.

128.     Defendant's statements and assurances that it would only utilize Plaintiff's

products in connection with the Green project was a false statement of material fact.

129.     Defendant, based on the now-apparent relationships it has to Plaintiff's

competitors, knew that its statements and assurances were false.  Defendant never

intended to use Plaintiff's products for the Green project.

130.     Defendant made its assurances of using Plaintiff's products only with the intent that Plaintiff introduce it to Green and bring Defendant in as a partner on the project.

131.     In reliance on Defendant's representations, Plaintiff proceeded to introduce Defendant to Green and partner with Defendant on the Green project.

132.     As a result of the misrepresentations made by Defendant to Plaintiff, Plaintiff has suffered damages as a result of its reliance on the misrepresentations.

WHEREFORE, Plaintiff, AUTOTECH TECHNOLOGIES, LP d/b/a EZAUTOMATION, respectfully requests that this Honorable Court enter judgment in its favor in the amount of $5,000,000.00 for its loss of business associated with the Green project, and for any and all other relief this Court deems just and proper.

## COUNT VI – FRAUD
## AGAINST WEBERG

133.     Plaintiff hereby incorporates Paragraphs 1 through 64 as though fully set forth herein.

134.     Plaintiff was approached by Green to facilitate and complete an anticipated project on behalf of Green.

135.     Plaintiff presented Weberg with the opportunity for Defendant to be its partner in connection with the Green project.

136.     Before introducing Defendant to Green, Weberg repeatedly assured Plaintiff that only Plaintiff's products would be used to complete Green's project, per the wishes of Green itself.

137.     Plaintiff, as the current provider for Green, insisted that only its products be used for the Green project and per Green's wishes.

138.     After Weberg assured Plaintiff repeatedly that only its products would be used and based on its reliance on the same, Plaintiff introduced Weberg to Green and entered into a partnership arrangement with Defendant for the purposes of completing the Green project.

139.     Thereafter, Weberg began communicating directly with Green.

140.     Unbeknownst to Plaintiff, Weberg began advising Green that it should use Plaintiff's competitors' products for Green's anticipated project.

141.     Unbeknownst to Plaintiff, Weberg presented Green with alternatives to Plaintiff's products.

142.     Unbeknownst to Plaintiff, Weberg advised Green that Plaintiff's products were inferior and/or incapable of providing Green the functionality that it required for its project.

143.     Weberg's statements and assurances that Defendant would only utilize Plaintiff's products in connection with the Green project was a false statement of material fact.

144.     Weberg, based on the now-apparent relationships Defendant has to Plaintiff's competitors, knew that his statements and assurances were false.

145.     Weberg made its assurances of using Plaintiff's products only with the intent that Plaintiff introduce him to Green and bring Defendant in as a partner on the project.

146.     In reliance on Weberg's representations, Plaintiff proceeded to introduce Defendant and Weberg to Green and partner with Defendant on the Green project.

147.     As a result of the misrepresentations made by Weberg to Plaintiff, Plaintiff has suffered damages as a result of its reliance on the misrepresentations.

WHEREFORE, Plaintiff, AUTOTECH TECHNOLOGIES, LP d/b/a EZAUTOMATION, respectfully requests that this Honorable Court enter judgment in its favor in the amount of $5,000,000.00 for its loss of business associated with the Green project, and for any and all other relief this Court deems just and proper.

**AUTOTECH   TECHNOLOGIES,   LP   d/b/a EZAUTOMATION,**

By: */s/ Anish Parikh*
One of their Attorneys

Parikh Law Group, LLC
Anish Parikh, 6298612
anish@plgfirm.com
150 S. Wacker Drive, Suite 2600
Chicago, IL 60606
(312) 725-3476